UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNUM LIFE INSURANCE COMPANY | : |
| OF AMERICA and PROVIDENT LIFE AND | : |
| ACCIDENT INSURANCE COMPANY | : |
| Plaintiffs, | : |
| | : |
| v. | :      NO. 3:10CV00538 (DJS) |
| | : |
| LAUREN SCOTT, CAROL BRIDGMAN | : |
| and JAMES BRIAN SCOTT (a/k/a BRIAN | : |
| J. SCOTT) | : |
| Defendants. | : |

MEMORANDUM OF DECISION AND ORDER

This is an interpleader action filed pursuant to Fed. R. Civ. P. 22[1] by Unum Life

Insurance Company of America ("Unum") and Provident Life and Accident Insurance Company

("Provident") (collectively, the "Plaintiffs") concerning the proceeds of two insurance policies on

the life of the late Lee Scott totaling $46,735.00 (the "proceeds"). The total amount available

under the Unum Life Insurance Company of America policy (the "Unum Policy") is $34,000.000

and the total amount available under the Provident Life and Accident Insurance Company policy

(the "Provident Policy") is $12,735.00.  Following the death of Lee Scott in September 2009,

competing claims against the proceeds were filed with the Plaintiffs by the defendants,  Carol

Bridgman ("Bridgman"), James Brian Scott (a/k/a Brian J. Scott) ("J. Scott"), and Lauren Scott.

In answering the Plaintiffs' complaint, each of the defendants raised a "claim against

interpleaded funds." Currently before the court is a motion filed by the defendants Bridgman and

J. Scott pursuant to Fed. R. Civ. P. 12 (b)(6) which seeks the dismissal of the claim against

---

[1]Fed. R. Civ. P. 22 (a)(1) provides in pertinent part that "[p]ersons with claims that may
expose a plaintiff to double or multiple liability may be joined as defendants and required to
interplead."

interpleaded funds asserted by the *pro se* defendant Lauren Scott. The issue is whether the defendant Lauren Scott's claim against interpleaded funds adequately states a claim upon which relief can be granted. For the reasons that hereafter follow, the motion to dismiss filed by the defendants Bridgman and J. Scott (**dkt. # 18**) is **GRANTED**.

STANDARD

"The function of a motion to dismiss under Rule 12 (b)(6) is to determine whether the plaintiff – or here, the counter-claimant – has stated a legally-cognizable claim that, if proven, would entitle [her] to relief. Due to this circumscribed purpose, when considering a motion to dismiss, the Court accepts as true all factual allegations in the counter-claim[] and draws all inferences from these allegations in the light most favorable to the counter-claimant." *Monson v. Whitby School, Inc.*, No. 3:09CV1096 (MRK), 2010 U.S. Dist. LEXIS 77702, at * 3 (D. Conn. Aug. 2, 2010). In addition to accepting as true the well-pleaded factual allegations in the claim, a court deciding a motion to dismiss under Fed. R. Civ. P. 12 (b)(6) "may consider any written instrument attached to the complaint, [and] statements or documents incorporated into the complaint by reference . . . ." *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The court reviews the sufficiency of Lauren Scott's claim "mindful of th[e] duty to construe more liberally her *pro se* [claim]." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008)

"As a matter of substance, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *MLSMK Investment Co. v. JP Morgan Chase & Co.*, 431 F. App'x 17, 18 (2d Cir. 2011)(internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief

will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009). "[A]ccepting creditable allegations as true, the Court must . . . determine whether they plausibly suggest an entitlement to relief." *Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 737 F. Supp. 2d 194, 215 (S.D.N.Y. 2010).

FACTS[2]

On or about February 1, 1999,  Lee Scott, who was employed by Foxwoods Resort Casino,  received life insurance coverage under the Unum Policy (Unum Group Life Insurance Policy No. 585125-002). The total amount of coverage for which Lee Scott was eligible was $34,000.00 in basic life insurance. The designated beneficiary for the Unum Policy was Brian Scott, the brother of Lee Scott. The terms of the Unum Policy provided that "[y]ou [the insured] may change your beneficiary at any time by filing a form approved by Unum with your Employer. The new beneficiary designation will be effective as of the date you sign that form." (Dkt. # 1-1, at 12.)

On or about February 1, 2004, Provident issued the Provident Policy (Provident Policy Number 0202353210) on the life of Lee S. Scott[3] providing a life insurance benefit in the amount of $12,735.00. The designated beneficiary for the Provident Policy was "Carol S.  Bridgeman"

---

[2]In deciding this motion the court accepts as true the well-pleaded facts in the defendant Scott's Amended Answer and Claim against Interpleded [sic] Funds. (Dkt. # 21.) Through her "reassert[ion] [of] all paragraphs of [her] original answer to the complaint," (dkt. # 21, at 1), the defendant Scott admits all of the factual allegations in the Plaintiffs' complaint. (Dkt. # 12, at 1, ¶¶ 1-24.)

[3]The parties do not dispute that Lee Scott and Lee S. Scott are one and the same person.

[sic], the mother of Lee Scott. (Dkt. # 1-4, at 5.) The terms of the Provident Policy provided that any change in the designated beneficiary "must be made in writing. . . , must be signed by [the insured] . . .and must be filed at our Home Office." (Dkt. # 1-3, at 9.)

On October 20, 2007, Lee Scott married the defendant Lauren Scott. On November 19, 2007, Lee Scott added his wife Lauren Nakashian[4] to his medical and dental insurance. At that time he also changed his 401(k) beneficiary from his brother Brian J. Scott to Lauren Nakashian. Prior to his death on September 27, 2009, Lee Scott expressed to his wife and two other individuals his intent to financially care for his wife even after his death. On two occasions Lee Scott "made attempts . . . to change the beneficiary to Lauren Scott . . . . The first attempt was made on a holiday and the office was closed, the second attempt made was made during a meeting where the office was closed." (Dkt. # 21, at 1, ¶ 1.) At no time did Lee Scott file a form signed by him changing the designated beneficiary for either the Unum Policy or the Provident Policy.

Following the death of Lee Scott, Unum received claims from James Brian Scott and Lauren Scott, both of whom claimed entitlement to all of the life insurance benefits under the Unum Policy for which Lee Scott was eligible, i.e., $34,000.00. Similarly, Provident received claims from Carol Bridgman and Lauren Scott, both of whom claimed entitlement to all of the life insurance benefits under the Provident Policy for which Lee Scott was eligible, i.e., $12,735.00. Due to the adverse claims to Lee Scott's life insurance benefits, Unum and Provident have refrained from making payment of those benefits.

---

[4]The parties do not dispute that Lauren Scott and Lauren Nakashian are one and the same person.

DISCUSSION

In a previous ruling in this case, the Court concluded that both the Unum Policy and the Provident Policy "were components of an overall employer plan to provide benefits to its employees that satisfies the requirements of ERISA." (Dkt. # 37, at 3.) With limited exceptions not applicable in this case, ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "The basic preemption provision of ERISA is deliberately expansive. . . . Unless otherwise encompassed in the saving clause, any state law relating to any ERISA plan is preempted." *Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14 (2d Cir. 1993) (internal quotation marks omitted).

"The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208  (2004). "[ERISA] [p]lans are required to be established and maintained pursuant to a written instrument, and the plan terms must be communicated to participants through an easily understood summary plan description, and a summary of any material modification to the plan. The required writings are given primary effect and strictly enforced, and plan administrators must adhere to the bright-line requirement to follow plan documents in distributing benefits." *Kammerer v. Motion Picture Industry Pension Plan*, No. 10 Civ. 3224 (SAS), 2011 U.S. Dist. LEXIS 36123, at *24-25 (S.D.N.Y. March 31, 2011) (internal quotation marks omitted). "The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule: simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get

what's coming quickly, without the folderol essential under less-certain rules." *Kennedy v. Plan Administrator for DuPont Savings and Investment Plan*, 555 U.S. 285, 301 (2009) (internal quotation marks omitted).

Both the Unum Policy and the Provident Policy gave a "clear set of instructions" to plan participant Lee Scott for "making his own instructions clear" as to his designated beneficiary. Both policies required any change in the designated beneficiary to be: (1) in writing and (2) signed by the insured, i.e., Lee Scott. At no time did Lee Scott file any written, signed change of beneficiary designation as to either the Unum Policy or the Provident Policy. It is apparent that Lee Scott did not effect a change of beneficiary as to either policy in compliance with the requirements of the change of beneficiary provisions of those policies.

The defendant Lauren Scott contends that notwithstanding the fact that Lee Scott did not change his designated beneficiary as specified in the Unum Policy and the Provident Policy, he had "[o]n numerous occasions . . . made attempts . . . to change the beneficiary to Lauren Scott, the widow," and had "frequently communicated . . . his intent to take care of his wife first and foremost" in the presence of Lauren Scott and two other named individuals." (Dkt. # 21, at 1.) As noted above, the Supreme Court has stated "that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent . . . ." *Kennedy*, 555 U.S. at 301. The Court recognizes, however, that other courts have applied the federal common law doctrine of "substantial compliance" in cases involving ERISA plan beneficiary disputes and will proceed to analyze Lauren Scott's claim in light of that doctrine.

" '[P]ursuant to federal common law, an insured substantially complies with the change of

beneficiary provisions of an ERISA life insurance policy when the insured: (1) evidences his or her intent to make the change and (2) attempts to effectuate the change by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'" *Hartford Life Insurance Co. v. Einhorn*, 676 F. Supp. 2d 116, 136 (E.D.N.Y. 2009) (quoting *Phoenix Mutual Life Insurance Co. v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994). Accepting as true all factual allegations in Lauren Scott's claim against the interpleaded funds, the Court finds for purposes of the motion to dismiss that the decedent Lee Scott did evidence his intent to change the designated beneficiary of his Unum Policy and Provident Policy to Lauren Scott. The question then is whether Lee Scott attempted to effectuate these changes "by undertaking positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the polic[ies]." *Id.*

The issue before the court in *Einhorn*, which involved a dispute over the proceeds of a life insurance policy, was "whether a signed but undated Change of Beneficiary form constituted 'substantial compliance' with the requirements for changing the beneficiaries of the policy." *Id.* at 117. The policy at issue in that case provided that "a change of beneficiary must be done in writing on a form satisfactory to [the insurance company]. The change of beneficiary form must be filed with the employer prior to the death of the insured." *Id.* at 138. Based on the facts before it, the court found that "[e]verything that could have been done by [the insured] to [effect a change of beneficiary] was done - - except the insertion of the date on the change form." *Id.* at 137. The insured in *Einhorn* had "executed a . . . Change of Beneficiary form [issued by her former employer] and sent it to her former employer, apparently in compliance with the procedure instructed by [her former employer]." *Id.* at 134. Although the insured had not dated

the executed change of beneficiary form, the court noted that the form did not have a space designated for the date. The court ruled that the signed but undated change of beneficiary form submitted to the insured's former employer was in substantial compliance with the ERISA policy and constituted a valid change of beneficiary.

In contrast to *Einhorn*, the court in *Prudential Insurance Co. of America v. Schmid*, 337 F. Supp. 2d 325 (D. Mass. 2004) found a lack of substantial compliance with an ERISA policy provision governing beneficiary changes. *Schmid* was also an interpleader action in which there were competing claims to the proceeds of a life insurance policy. The policy at issue in *Schmid* required an insured seeking to change his designated beneficiary "to complete a Change of Beneficiary Form, have it witnessed by someone other than the proposed new beneficiary and return it to the insurance company." *Id.* at 330. The facts before the court indicated that the insured had expressed his intention to change the designated beneficiary of a term life insurance policy from his daughter by a first marriage to his second wife and had requested a change of beneficiary form to effectuate that change. The insured had married his second wife a number of years after he had named his daughter beneficiary of the term life policy, and he had designated his second wife as his sole beneficiary under another insurance policy issued subsequent to his second marriage. In response to his request, the insured received a change of beneficiary form with instructions as to how to complete and return the form. Along with the form, he received erroneous information identifying his second wife, rather than his daughter, as the beneficiary of his term life insurance policy. The insured never completed the change of beneficiary form.

Although it found sufficient evidence of the insured's intent to change his beneficiary, the court found his actions, i.e., expressing his intent and requesting change of beneficiary forms,

-8-

"insufficient to accomplish a change of beneficiary . . . ." *Id.* Citing to other cases in which the expression of an intent to make a change coupled with obtaining a change of beneficiary form did not meet the standard of substantial compliance, the court concluded that the insured "did not take the necessary steps to change his beneficiary." *Id.* at 331. *See also American International Life Assurance Co. of New York v. Vazquez*, No. 02 Civ. 141 (HB), 2003 U.S. Dist. LEXIS 2675, at *17-18 (S.D.N.Y.  Feb. 25, 2003) (expressing an intent to change the designated beneficiary and obtaining the change of beneficiary form did not satisfy the substantial compliance standard). The Court considers the facts alleged by Lauren Scott to be more akin to those in *Schmid* than those in *Einhorn*. The policies on the life of Lee Scott required any change in the designated beneficiary to be in writing and signed by Lee Scott. There is no factual allegation that Lee Scott ever signed any written document indicating a change in beneficiary under either the Unum Policy or the Provident Policy.

In order to survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12 (b)(6), a claim must plead enough facts to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ccepting creditable allegations as true, the Court must . . . determine whether they plausibly suggest an entitlement to relief." *Coalition for a Level Playing Field, L.L.C. v. Autozone, Inc.*, 737 F. Supp. 2d 194, 215 (S.D.N.Y. 2010). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the [claim], the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [claimant's] inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In her claim, Lauren Scott alleges that "[o]n numerous occasions the deceased [Lee Scott] and his widow Lauren Scott made attempts, after their marriage, to change the beneficiary to Lauren Scott, the widow. Due to the conflict of working hours to insurance office hours, transportation, parking issues and the lack of free and available time, the deceased was never successful in making the change he wanted and intended." (Dkt. # 21, at 1.) She goes on to specify that "[t]he first attempt was made on a holiday and the office was closed, the second attempt made was made during a meeting where the office was closed." (*Id.*) The Court notes that Lee Scott and Lauren Scott were married on October 20, 2007 and Lee Scott died nearly two years later on September 27, 2009. There are no other factual allegations of positive action taken by Lee Scott to change the designated beneficiaries during that period of nearly two years

The Court is mindful that "even after *Iqbal* and *Twombly*, we remain obligated to construe *pro se* complaints liberally, and therefore we look to see whether a *pro se* complaint contains sufficient factual allegations to meet the plausibility standard by reading the complaint with special solicitude and interpreting it to raise the strongest claims it suggests." *Jackson v. County of Rockland*, No. 10-3968-pr, 2011 U.S. App. LEXIS 23667, at *4 (2d Cir. Nov. 23, 2011) (internal quotation marks and citation omitted). The Court concludes that the factual allegations contained in Lauren Scott's claim simply cannot be construed in a manner that plausibly suggests an entitlement to relief on the basis of substantial compliance with the change of beneficiary provisions of the life insurance policies at issue. The second step of the substantial compliance test requires "positive action which is for all practical purposes similar to the action required by the change of beneficiary provisions of the policy.'" . *Einhorn*, 676 F. Supp. 2d at 136 (internal quotation marks omitted).  Lauren Scott's claim does not allege, or even suggest,

-10-

positive action similar to the action required by the change of beneficiary provisions, i.e., written changes signed by Lee Scott. Since Lauren Scott's factual allegations do not meet the required plausibility standard, she "fails to state [a] claim[] upon which the relief [she] seeks can be granted, even under the liberal standard of review for *pro se* pleadings." *Jackson*, 2011 U.S. App. LEXIS 23667, at *4.

CONCLUSION

For the foregoing reasons, the motion to dismiss filed by the defendants Bridgman and J. Scott (dkt. # 18) is GRANTED. The Court will allow the defendant Lauren Scott the opportunity to file a second amended claim if she wishes to plead in good faith additional facts in support of her contention that she is entitled to relief on the basis of Lee Scott's  substantial compliance with the change of beneficiary provisions of the Unum Policy and the Provident Policy. Lauren Scott shall file her second amended claim, if she wishes to do so, on or before May 1, 2012. If Lauren Scott does not file a second amended claim on or before May 1, 2012, the Court will close the case.

SO ORDERED this 29th  day of March, 2012.


_____/s/ DJS_____
          DOMINIC J. SQUATRITO
          UNITED STATES DISTRICT JUDGE